USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/19/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

CHERYL SANTIAGO,

            Petitioner,

    – against –

ANTHONY J. ANNUCCI,

            Respondent.

------------------------------------------------x

14-CV-03813 (TPG)

**OPINION**

Before this court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 brought by petitioner Cheryl Santiago, whose conviction for second degree murder in Dutchess County Court was affirmed on direct appeal by the Appellate Division of the Supreme Court of New York, 949 N.Y.S.2d 78 (N.Y. App. Div. 2d Dep't 2012), and the Court of Appeals of New York, 9 N.E.3d 870 (N.Y. 2014). ECF No. 2. Santiago alleges that her trial counsel provided ineffective assistance and deprived her of her Sixth Amendment rights because counsel failed to (1) object to a PowerPoint slideshow, (2) seek redaction of letters containing sexually explicit material, and (3) object to certain trial testimony. ECF No. 4, at 3-12.

The first two issues were addressed on the merits by both the Appellate Division and the Court of Appeals, and thus the court reviews the state court findings with deference to the state court. The third issue was not addressed by either court, and thus requires a merits determination. For the reasons discussed below, Santiago's petition is denied in its entirety.

1

**BACKGROUND**

**I.   Facts Giving Rise to Petitioner's Conviction**

The facts in this case relate to the death of Justice Santiago ("Justice"), twenty-two month-old daughter of Santos Santiago ("Santos"). Petitioner Cheryl Santiago ("Santiago") married Santos in January 2007, and at the time of their marriage Santos had a daughter, Justice, from a previous relationship. *People v. Santiago*, 9 N.E.3d 870, 871-72 (N.Y. 2014). Santos and Justice's biological mother shared custody, and Justice would stay with Santos and Santiago every other week. *Id.* at 872.

On the night of October 23, Santiago took Justice into her bedroom to put her to sleep. *Id.* After she had fallen asleep, Santiago came out of the bedroom to return to Santos. *Id.* Santiago and Santos went to bed around 11:00pm and Santos left for work the next morning at approximately 5:00am. *Id.* Almost immediately after Santos left the house, Santiago called him to tell him that Justice was stiff and not moving. *Id.*; ECF No. 2, Ex. 1, at 4. Santos then called 911. *Santiago*, 9 N.E.3d at 872.

On October 24, 2007, investigators Eugene Donnelly and Todd Kara interviewed Santiago. ECF No. 10, at 7. Santos was also deposed. ECF No. 10, at 7. Santiago told the investigators that after Santos left for work at around 5:30am, she went to check on Justice, who was unresponsive at that time. ECF No. 10, at 7. After comparing her responses in the interview to Santos's deposition and finding some discrepancies, the investigators went back to Santiago and asked her if she had anything else to tell them. ECF No. 10, at 7.

2

Santiago then told the investigators that it was an accident. ECF No. 2, Ex. 1, at 5; ECF No. 10, at 8. The investigators informed Santiago of her *Miranda* rights, which she waived, and the investigators took both a written and a videotaped statement from her that evening. ECF No. 2, Ex. 1, at 5; ECF No. 10, at 8.

The following is the substance of the statement that Santiago gave. Santiago stated that on the night of October 23, frustrated that Justice would not fall asleep, she placed her hand over Justice's mouth for approximately thirty seconds to one minute. ECF No. 2, Ex. 1, at 5; ECF No. 10, at 8. When Justice closed her eyes, Santiago thought she had fallen asleep and returned to Santos. ECF No. 10, at 8. She also stated that the next morning, she checked on Justice and found her in the same position as the night before, "cold and stiff." ECF No. 10, at 8. She then stated that she panicked and staged the scene by rubbing a plastic bag into Justice's face and placing it near her. ECF No. 10, at 9.

On October 24, 2007, Dr. Dennis Chute, a deputy medical examiner of Dutchess County, conducted an autopsy. ECF No. 10, at 6; *Santiago*, 9 N.E.3d at 872. Dr. Chute found that Justice was a healthy child and ruled out any natural causes of death such as asthma or bronchial issues. ECF No. 10, at 6. Dr. Chute's report concluded that Justice had died of "asphyxia resulting from suffocation." *Santiago*, 9 N.E.3d at 873.

Santiago was arrested and taken to Dutchess County Jail, where she became friends with a fellow inmate named Michael Bryant. ECF No. 10, at 9; *Santiago*, 9 N.E.3d at 873. They became close and spoke to each other regularly,

both in person and via letters. ECF No. 10, at 9. They spoke about personal matters including the charges against her. ECF No. 10, at 9.

## II. State Court Proceedings

In January 2008, Santiago was charged with second degree murder under New York Penal Law § 125.25(1) (McKinney 2017) as well as two counts of second degree criminal contempt under New York Penal Law § 215.50(3). ECF No. 10, at 2; ECF No. 10, Ex. 2, at 1-2. The substance of the murder charge was that Santiago had suffocated twenty-two month-old Justice on October 23, 2007. ECF No. 10, Ex. 2, at 1. In May 2008, the misdemeanor counts were severed from the murder charge. ECF No. 10, at 3.

Santiago was tried by a jury on the second degree murder charge in Dutchess County Court. The prosecution alleged that on the night of October 23, 2007, Santiago caused the death of Justice by suffocating her for approximately 4.5 to 6 minutes. ECF No. 10, at 2-3. The prosecution alleged that after Santiago caused Justice's death, she left Justice in her bed overnight, and early the next morning Santiago attempted to cover up her actions by placing a plastic bag near the child. ECF No. 10, at 3.

At the trial, the prosecution introduced Santiago's letters to Bryant, and the jury also heard his testimony. ECF No. 10, at 9; *Santiago*, 9 N.E.3d at 873. Bryant testified that in February of 2008, he wrote Santiago a letter asking her to be truthful with him about the case. ECF No. 10, at 9. He further testified that when they spoke in person a few days later, she admitted to him that she had committed the crime. ECF No. 10, at 9; *Santiago*, 9 N.E.3d at 873. The

4

prosecution sought to introduce the letter correspondence as evidence that Santiago trusted, and confided in, Bryant. ECF No. 10, at 10.

Defense counsel objected to admission of letters based on their prejudicial nature—they contained sexually explicit language regarding Santiago's desires to be intimate with Bryant. ECF No. 10, at 10. In response, the County Court redacted the letters to remove passages that were "unduly prejudicial." *Santiago*, 9 N.E.3d at 873. Before the letters were read to the jury, counsel renewed the objection but did not specify the passages that were prejudicial or ask for further redaction. *Id.* The County Court denied the objection and read the letters to the jury. *Id.* The court instructed the jury, however, that the letter should not be viewed "with regards to the defendant's character or her lifestyle," but were to be viewed for the sole purpose of demonstrating Santiago's closeness with Bryant. ECF No. 10, at 9-10; *see also Santiago*, 9 N.E.3d at 874.

The jury heard expert medical testimony from Dr. Chute and one other board-certified pathologist, Dr. Michael Baden. *Santiago*, 9 N.E.3d at 873. Dr. Chute testified that he believed to a reasonable degree of medical certainty that Justice had died of asphyxiation due to suffocation. ECF No. 10, at 5. He drew this conclusion based on several signs of asphyxiation, including frothy fluid in her airway and lungs as well as petechial in her thymus gland. ECF No. 10, at 5. Dr. Chute also testified that suffocation would have taken approximately four to six minutes. *Santiago*, 9 N.E.3d at 873. He estimated that Justice had died at approximately 8:30 or 9:00pm on August 23. ECF No. 10, at 5.

5

Dr. Baden, another expert medical witness for the prosecution and a board-certified pathologist, testified that the wetness on one of the pillows was consistent with someone wiping something on the pillow. ECF No. 10, at 6. He called this wetness a "wiping wetness," and testified that it may have indicated that Santiago wiped evidence on to the pillow after Santos left for work and before the emergency medical team arrived. ECF No. 10, at 6. He further testified that a child of Justice's size would be able to pull an object away from her face if it was interfering with her breathing. *Santiago*, 9 N.E.3d at 873. Postmortem photographs of Justice were also admitted into evidence. *Id.*

During the prosecution's summation, the prosecutor displayed a PowerPoint presentation for the jury consisting of a series of slides using the postmortem photographs of Justice. ECF No. 10, at 11; *Santiago*, 9 N.E.3d at 874. Before starting the PowerPoint, the prosecutor told the jury: "[I]f there's any question in your mind how long six minutes takes, take a look at this." *Santiago*, 9 N.E.3d at 874. The PowerPoint proceeded to display the postmortem pictures for six minutes with captions such as "struggle ends" and "brain death occurs" and "cardiac death" corresponding to the amount of time it would take for these events to occur. *Id.* at 874. At six minutes, Justice's image faded away into whiteness. *Id.*

On December 16, 2008, the jury found Santiago guilty of second degree murder, and she was initially sentenced to twenty-two years to life imprisonment. ECF No. 10, at 2. On appeal to the Appellate Division of the New York Supreme Court, the court found that the evidence did not support a

conviction of second degree murder, because "it [did] not prove beyond a reasonable doubt that it was [Santiago's] conscious objective to kill the infant victim," and only showed that she "acted recklessly in covering the infant victim's nose and mouth." *People v. Santiago*, 949 N.Y.S.2d 78, 81 (N.Y. App. Div. 2d Dep't 2012). The court reduced Santiago's murder conviction to manslaughter, vacated the sentence, and remanded to the County Court for resentencing. *Id.* This decision was rendered on July 11, 2012. ECF No. 2, Ex. 1, at 2. Santiago was resentenced on December 12, 2012, and received five to fifteen years imprisonment. ECF No. 2, Ex. 1, at 2.

On November 26, 2012, Santiago appealed the Appellate Division's decision modifying her sentence and otherwise affirming the County Court's ruling. The Appellate Division had rejected Santiago's other claims, including a claim for ineffective assistance of counsel. *Santiago*, 949 N.Y.S.2d at 81; *see also Santiago*, 9 N.E.3d at 874. The three claims that the Appellate Division had rejected and that were on appeal were (1) admissibility of the confession, (2) admissibility of the letters between Santiago and Bryant, and (3) counsel's ineffectiveness for failing to object to the prosecution's summation. *Santiago*, 9 N.E.3d at 874-77. On February 25, 2014, the Court of Appeals affirmed the Appellate Division on all three issues. *Id.* at 877.

Santiago then petitioned for the instant writ of habeas corpus on May 29, 2014. ECF No. 2.[1] The case was transferred to this court on September 26, 2017.

---

[1] The case was initially assigned to Judge William H. Pauley, III, and was reassigned to Judge Cathy Seibel on September 7, 2016. The case was then reassigned from Judge Seibel to this court on September 26, 2017.

## STANDARD OF REVIEW

### I. Habeas Review when there is a State Court Finding

#### A. Federal Review under 28 U.S.C. § 2254

A petition for habeas corpus with respect to persons in state custody is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d). The AEDPA "place[d] a new constraint" on the power of federal courts to grant a state prisoner's petition, providing that writs of habeas corpus arising from a state court judgment "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (emphasis added); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000).

Thus, in order to prevail on a § 2254 claim, the habeas petitioner has the burden of proving that the state court decision was either "contrary to" or "involved an unreasonable application of" federal law. 28 U.S.C. § 2254(d)(1). Under the "contrary to" prong, a habeas petitioner must show that the state court "arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or that the state court "decide[d] a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. Under the "unreasonable application" prong, the petitioner has the burden of showing that the state court used the correct legal standard but "unreasonably applied" that standard to the specific facts of the case. *Id.* To show

that a state court unreasonably applied the legal standard, the petitioner must show that the court applied federal law in an "objectively unreasonable manner"—*i.e.*, that it was an *unreasonable* rather than merely an *incorrect* application. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002); *see also Williams*, 529 U.S. at 410 ("[T]he most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law.").

The determination that the state court decision was unreasonable rather than merely incorrect is a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Even in cases where a court may have reached a conclusion contrary to the state court, a federal court must deny habeas relief as long as the contrary conclusion was not unreasonable. *See Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable."). Further, the AEDPA requires that federal courts presume the correctness of state courts' factual findings unless the petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### B. Federal Review for Ineffective Assistance Claims

A claim for ineffective assistance of counsel is analyzed under the standards set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that when analyzing claims for ineffective assistance of counsel, courts must look to whether the defendant demonstrated that (1) representation "fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 688, 694.

Under the first prong, the defendant has the burden of showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (quoting *Strickland*, 466 U.S. at 687). The defendant must demonstrate that his or her counsel "failed to act 'reasonabl[y] considering all the circumstances." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 688). There is a " 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* (quoting *Strickland*, 466 U.S. at 687). Overall, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689.

Under the second prong, the defendant is required to prove that there is a "reasonable probability"—"a probability sufficient to undermine confidence in the outcome"—that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. The defendant must show that the likelihood of a different result is "substantial, not just conceivable." *Harrington*, 562 U.S. at 112; *see also Cullen*, 563 U.S. at 189. The defendant must "*affirmatively* prove prejudice." *Strickland*, 466 U.S. at 693 (emphasis added).

Because both the AEDPA and *Strickland* establish highly deferential standards, review of ineffective assistance of counsel claims under the AEDPA is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Harrington*, 562 U.S. at 105 ("The standards

created by *Strickland* and § 2254 are both highly deferential, and when the two apply in tandem, review is doubly so." (internal quotations and citations omitted)).

Where a habeas petitioner seeks review of a claim for ineffective assistance of counsel, the petitioner must show, pursuant to the AEDPA, that the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002); *see also Harrington*, 562 U.S. at 101. This is a separate question from whether, under the federal court's independent judgment, counsel's performance fell below the standard laid out in *Strickland*. *See Harrington*, 562 U.S. at 101. In the habeas context, the petitioner must "do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance"—the petitioner must instead show that the state court applied *Strickland* unreasonably. *Bell*, 535 U.S. at 698. As long as there is a "reasonable argument that counsel satisfied *Strickland*'s deferential standard," the petitioner will not be granted relief. *Harrington*, 562 U.S. at 105.

## II. Habeas Review when there is no State Court Finding

The AEDPA governs situations in which claims were adjudicated on the merits in state court proceedings. *See* 28 U.S.C. § 2254(d) (stating that the statute applies "with respect to any claim that was adjudicated on the merits in State court proceedings"). It does not, however, address how a federal court reviewing a habeas petition should proceed when state courts have not decided a claim on the merits.

11

In such cases, federal courts have found that if the claim was properly presented to the state court, federal courts may review the claim upon a petition for habeas relief but that 28 U.S.C § 2254 does not apply. *See Weeks v. Angelone*, 176 F.3d 249, 263 (4th Cir. 1999) (finding that the state court failed to address a claim and thus declining to apply 28 U.S.C. § 2254, and instead reviewing the claim *de novo*); *Fisher v. Texas*, 169 F.3d 295, 304 (5th Cir. 1999) (finding that a federal court may review a habeas claim that is not procedurally barred and is not adjudicated on the merits, but not under 28 U.S.C. § 2254); *see also Lopez v. Ercole*, 588 F. App'x 39, 40 n.1 (2d Cir. 2014) (stating that petitioner's brief contested whether the state court reached a decision on the merits, but finding that the state court did reach a decision on the merits and that therefore the 28 U.S.C. § 2254 standard of review applied).

When a claim has not been ruled on by a state court, courts analyze the claim under the standard set out by the Supreme Court in *Teague v. Lane*, 489 U.S. 288 (1989). *Daniel v. Cockrell*, 283 F.3d 697, 702 (5th Cir. 2002), *abrogated on other grounds by Glover v. United States*, 531 U.S. 198 (2001) ("As previously noted, the merits of this federal ineffective assistance of counsel claim were not ruled on by . . . the state courts, so the claim is not governed by section 2254(d). Review of this claim is hence governed by the principles set forth in *Teague v. Lane*, 489 U.S. 288 (1989)); *Fisher*, 169 F.3d at 304 ("We agree . . . that federal courts may apply the *Teague* bar to a habeas petitioner's claims that were not adjudicated on the merits by a state court and are also not procedurally barred."); *Green v. French*, 143 F.3d 865, 874 (4th Cir. 1998), *cert. denied*, 525

12

U.S. 1090 (1999), *abrogated on other grounds by Williams*, 529 U.S. 362 ("[T]he anti-retroactivity principles of *Teague* would appear applicable in contexts where the limitations of section 2254(d)(1) are not, such as where a habeas petitioner's constitutional claim is not properly raised in state court and therefore not adjudicated on the merits in State court . . . ." (internal quotations and citations omitted)).

Under *Teague*, federal courts may not announce or apply new procedural constitutional rules when conducting habeas review—"new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Teague*, 489 U.S. at 310. New procedural rules are not applied retroactively on habeas review unless they fall within one of two narrow exceptions: (1) if the rule places "an entire category of primary conduct beyond the reach of criminal law" or (2) if it is a "new watershed rule of criminal procedure" that is "necessary to the fundamental fairness of the criminal proceeding." *United States v. Mandanici*, 205 F.3d 519, 525 (2d Cir. 2000). If a rule does not fall into either one of these categories, it will not apply retroactively on habeas review.

Thus, when a habeas court reviews a claim that has not been decided on the merits in the court below, the court must analyze the underlying facts based on three considerations: (1) the date that the petitioner's conviction became final, (2) whether the state court considering the claim at that time "would have felt compelled by the existing precedent to conclude that the [rule being sought] was required" by the Constitution, and (3) if the court does find that the rule is new,

13

whether the rule would fall into any of the *Teague* non-retroactivity exceptions and thus would apply retroactively. *O'Dell v. Netherland*, 521 U.S. 151 (1997); *see also Cockrell*, 283 F.3d at 705 ("The *Teague* analysis involves three determinations: (1) when the applicant's conviction became final; (2) whether a state court considering the applicant's federal claim when his conviction became final would have felt compelled by existing precedent to apply the rule the applicant now seeks; and (3) if the applicant seeks to apply a new rule, whether that rule falls within one of the narrow exceptions to the non-retroactivity principle.").

**DISCUSSION**

In the instant action, petitioner claims that her counsel at trial provided ineffective assistance because he (1) failed to object to a slide show displaying pictures of her deceased child, (2) failed to seek redaction of sexually explicit letters, and (3) failed to object to certain expert testimony regarding evidence of suffocation. ECF No. 2, Ex. 1, at 17; ECF No. 4, at 3-12. The court reviews the first two claims under the "doubly deferential" standard of AEDPA ineffective-assistance claims, *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011), and the last claim under the *Teague* standard, *Daniel v. Cockrell*, 283 F.3d 697, 702 (5th Cir. 2002), *abrogated on other grounds by Glover v. United States*, 531 U.S. 198 (2001).

**I.  Failure to Object to Prosecution's Summation**

Santiago claims that, contrary to the state court's findings, counsel's conduct fell below the *Strickland* standard when he failed to object to the

14

prosecution's PowerPoint slideshow, which displayed postmortem photographs of Justice for the jury. ECF No. 4, at 3-8.

As stated above, under the AEDPA, a court reviewing a habeas petition must look to only whether the state court (1) applied *Strickland* and (2) applied it in a way that was not "objectively unreasonable." *Bell v. Cone*, 535 U.S. 685, 699 (2002). Because it is clear from the face of the decision of the Court of Appeals that the court applied *Strickland*, and thus applied the correct legal standard under the first prong of the AEDPA, *see People v. Santiago*, 9 N.E.3d 870, 876-77 (N.Y. 2014), the court will only review whether the state court applied *Strickland* in an objectively reasonable manner under the second prong. The court will not independently analyze whether counsel's performance fell below the *Strickland* standard. *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

In determining that failure to object to the slideshow did not constitute ineffective assistance, the Court of Appeals found that "[t]he slides depicting an already admitted photograph, with captions accurately tracking prior medical testimony, might reasonably be regarded as relevant and fair, albeit dramatic, commentary on the medical evidence, and not simply an appeal to the jury's emotions." *Santiago*, 9 N.E.3d at 877. The Court of Appeals further noted that "the objection to the PowerPoint presentation that defendant now raises is not so 'clear-cut' or 'dispositive' an argument that its omission amounted to ineffective assistance of counsel." *Id.*

Upon review of the Court of Appeals' decision, the court finds that, analyzed under the deference accorded to habeas claims for ineffective

assistance, the Court of Appeals did not apply *Strickland* in an unreasonable manner. The Court of Appeals reasonably concluded that the prosecution used the PowerPoint in its summation to track the facts of the case. *Id.* Thus, the court dismisses Santiago's claim that her defense counsel provided ineffective assistance based on his failure to object to the prosecution's summation PowerPoint.

## II. Failure to Object to the Santiago–Bryant Letters

Santiago also claims that the state court incorrectly found that her defense counsel was acting reasonably when he failed to ask for further redaction of the letters exchanged with Bryant. ECF No. 4, at 8-11. She claims that "given no conceivable tactical advantage to be gained by not insisting on additional redactions, strong arguments to be made in support of redaction, and prejudice to his client absent further redactions, the state courts' findings that the attorney's performance was reasonable under prevailing professional norms were unreasonable." ECF No. 4, at 11.

In analyzing Santiago's second challenge, the Court of Appeals found that "[u]nder the circumstances, keeping in mind that defendant succeeded in achieving certain redactions as well as a proper limiting instruction that the jury must be presumed to have obeyed, we cannot conclude defense counsel provided less than meaningful representation with respect to the issue of the letters." *Santiago*, 9 N.E.3d at 876 (internal citations omitted). The court considered both counsel's first request for redaction as well as his success in securing a limiting instruction. *Id.* Further, the Court of Appeals found that "given the limiting

16

instruction, the result of defendant's appeal would not have been different had defense counsel preserved the issue by asking for further redactions." *Id.*

Based on the Court of Appeals' consideration of both *Strickland* factors, and again applying the doubly deferential standard outlined above, *Cullen*, 563 U.S. at 190, the court finds that the Court of Appeals did not unreasonably apply *Strickland*. The court found that defense counsel did provide adequate representation in achieving some redactions and asking for the limiting instruction. *Santiago*, 9 N.E.3d at 876. The court denies habeas relief as to this claim.

### III. Failure to object to Medical Testimony

Lastly, Santiago claims that her counsel provided ineffective assistance when he failed to object to Dr. Baden's medical testimony regarding the "wiping wetness." ECF No. 4, at 3-12. The court finds, and both petitioner and respondent agree, that neither the Appellate Division nor the Court of Appeals made a ruling on the merits with respect to this claim. ECF No. 4, at 11; ECF No. 9, at 22. Thus, the court reviews the claim under *Teague* as outlined above.

First, the court considers whether the claim was properly presented to the state court in the underlying proceedings. Santiago included this ineffective assistance claim in both her Appellate Division and Court of Appeals brief. ECF No. 4, at 11; ECF No. 9, at 19. Both parties agree that, despite her inclusion of the claim in both briefs, neither the Appellate Division nor the Court of Appeals addressed this claim. ECF No. 4, at 11; ECF No. 9, at 19. The court thus finds

that the claim was properly presented to the state courts, but that the state court did not reach a decision on the merits.

Santiago's conviction became final on February 25, 2014, when the Court of Appeals ruled on her appeal in *Santiago*, 9 N.E.3d 870. At the time of her conviction, ineffective assistance claims were governed by the *Strickland* standard detailed above. Thus, the court now looks to whether, at the time her conviction became final, Santiago would have been awarded the relief she seeks under *Strickland*. As stated above, under *Strickland*, petitioner must show that (1) her legal representation "fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 688, 694.

During the trial, Dr. Baden testified that the wetness that he observed on a pillow in some of the photographs was a "wiping wetness." ECF No. 4, at 11; ECF No. 9, at 19-20. Dr. Baden believed that this wetness indicated an "attempt to remove trace evidence" from the crime scene. ECF No. 4, at 11. Although defense counsel did not object to this testimony, he did discuss the testimony in length in his summation, and attempted to discredit Dr. Baden's testimony. ECF No. 9, at 21. He stated that Dr. Baden's testimony was based on review of a photograph and that Dr. Baden was not present at the scene. ECF No. 9, at 21. Defense counsel also stated that the investigators at the scene did not conduct testing of the pillow because it was "impossible to determine where the wetness came from." ECF No. 9, at 21. Nevertheless, Santiago claims that her counsel's

failure to object to this testimony amounted to ineffective assistance because Dr. Baden lacked expertise and his testimony was harmful to her. ECF No. 4, at 11-12. Santiago claims that "Dr. Baden had no qualifications for testifying about it, there is no excuse for defense counsel to have chosen not to object to the testimony, and any finding to the contrary is unreasonable." ECF No. 4, at 12.

While this testimony may have been harmful to Santiago, the court finds that defense counsel's conduct does not rise to the level of ineffective assistance under the *Strickland* standard. Defense counsel did attempt to discredit Dr. Baden's testimony during the trial. ECF No. 9, at 21. He specifically addressed Dr. Baden's testimony during his summation and went to great lengths to discredit him in the jury's eyes. ECF No. 9, at 21. Thus, under *Strickland*'s first prong, which affords a highly deferential review of counsel's performance, counsel did not make errors "so serious" that he was no longer functioning as the counsel guaranteed under the Sixth Amendment. *Harrington*, 562 U.S. at 103.

Further, under the second prong of *Strickland*, the court finds there is no reasonable probability that the result of the proceeding would have been different had counsel made this objection. 466 U.S. at 694. Dr. Chute—the medical examiner who personally performed Justice's autopsy—also provided expert medical testimony during the trial. ECF No. 10, at 6. He found that Justice was a healthy child and ruled out natural causes of death. ECF No. 10, at 6. He specifically found that the cause of death was "asphyxia" which likely resulted from suffocation. *Santiago*, 9 N.E.3d at 873. Based on the fact that the

prosecution provided other medical testimony supporting its case, the court cannot find that there is a "reasonable probability" that the result would have been different had counsel objected to Dr. Baden's testimony. *Strickland*, 466 U.S. at 694. Thus, Santiago's claim also fails under *Strickland*'s second prong, and the court finds that Santiago has not substantiated a claim for ineffective assistance. Thus, the court denies the habeas relief requested.

## CONCLUSION

Based on the reasons explained above, the court denies Santiago's petition as to all three claims. The first two claims are denied based on review of the state court determinations. The third claim is denied based on the court's independent review under *Strickland*, as required by *Teague*. Thus Santiago's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied in its entirety, and the Clerk of Court is requested to close this case.

SO ORDERED.

Dated: New York, New York
October 19, 2017

_____
Thomas P. Griesa
U.S. District Judge